UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 04-04-01 T |
| | : | |
| SIGISMUND DANTZLER | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Sigismund Dantzler ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a hearing was conducted on January 31, 2008. At that time, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to a term of imprisonment of four (4) months to be followed by a period of supervised release for thirty-two months.[1]

**Background**

On August 19, 2004, Defendant appeared before then Chief (now Senior) United States District Judge Ernest C. Torres for sentencing on a single count conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

---

[1] This sentence of imprisonment is two months less than the length of the sentence which the Court stated at the February 13, 2008, hearing it would recommend. <u>See</u> Disposition <u>infra</u> at 12-14.

The Court imposed a sentence of thirty-seven months imprisonment and three years of supervised release with the following special conditions: Defendant shall participate in and satisfactorily complete a program of substance abuse treatment on an inpatient or outpatient basis as approved by the probation office and the Court; during the term of supervised release, Defendant shall submit to up to seventy-two drug tests per year at such times as are approved by the probation office; Defendant shall participate in and satisfactorily complete a program of mental health treatment on an inpatient or outpatient basis as approved by the probation office; and, for every week Defendant is not employed on a full-time basis, Defendant shall perform twenty hours of community service as approved by the probation office.

Supervised release commenced on February 24, 2006, with an expiration date of February 23, 2009. On or about January 22, 2008, U.S. Probation Officer Kathleen M. Hopkins ("U.S.P.O. Hopkins") initiated a Petition for Summons for Offender under Supervision (the "Petition"), alleging that Defendant had violated four conditions of his supervised release. See Petition at 1-2. In response to the Petition, Judge Torres ordered the issuance of a summons, see id. at 2, and on January 31, 2008, Defendant appeared on the summons before this Magistrate Judge to answer to the Petition, see Docket.

**The Violation**

The Supervised Release Violation Report (the "Violation Report") alleges that Defendant has violated the following conditions of supervision in the manner indicated:

**Condition #3: Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

On October 3, 2007, Defendant was placed in the Random Urinalysis Screening Program. Defendant failed to report for

urine screens on the following dates: November 6, November 16, December 6, and December 10, 2007.

On November 9, 2007, Defendant was confronted regarding the missed urine screen on November 6, 2007. He stated that he did not report to the probation office for a urine screen due to the fact that his mother had a stroke and he had been at the hospital. He was instructed to report for the screen on November 13, 2007, and he subsequently complied.

On November 16, 2007, Defendant failed to report for a urine screen as instructed. A voice mail was left by the probation office for him to report on November 19, 2007. On November 19, 2007, he reported to the probation office and was questioned regarding the missed screen on November 16, 2007. Defendant stated that he had been at the hospital with his daughter. A copy of the discharge documentation was requested, and Defendant failed to provide such documentation.

On December 6, 2007, Defendant failed to report for a urine screen as instructed. On December 7, 2007, Defendant left a voice mail indicating that he missed his urine screen as he was at the temporary employment agency. A voice mail was left by U.S.P.O. Hopkins instructing him to report on December 10, 2007. Defendant failed to report on that date. A home visit was attempted on December 12, 2007, for the purpose of obtaining a urine screen. However, Defendant was not home.

**Condition #5: Defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.**

Since September 28, 2007, Defendant has failed to work regularly. On July 12, 2007, the Court was notified that Defendant had entered the Gosnold Residential Treatment Program on July 8, 2007. While at the residential program, the need for him to resume his employment was addressed during the case

conference on September 10, 2007. To date,[2] Defendant has failed to work regularly.

On October 18, 2007, Defendant's unemployment status was addressed telephonically with him. He stated that he had applied for several jobs at local factories. On October 26, 2007, he was contacted regarding his employment. Defendant stated that he applied at Home Depot and was awaiting a response. Further, during an office visit on the same date, Defendant indicated that he may have a job with Bali's Health or Vector. On November 2, 2007, Defendant notified the probation office that he had submitted an application at the Restaurant Depot. On November 8, 2007, the probation office spoke with Defendant's significant other, Ashley Boutaille, and was informed that he was working at a car dealership. On November 13, 2007, Defendant reported to the probation office and advised that he was no longer working for the dealership. He indicated that he left the dealership as several employees were using cocaine and that he did not want to remain in this environment. Since that time he has not secured any additional employment.

**Special Condition: Defendant shall participate as directed in a program of mental health treatment approved by the probation office.**

Defendant has failed to attend outpatient treatment at Gateway Healthcare, Inc., on the following dates: October 30, November 6, November 8, December 3, and December 5, 2007. As to this violation, Defendant's clinician at Gateway Healthcare, Inc., indicated that Defendant provided various reasons for his missed sessions, including the fact that he had overslept or was confused regarding the appointment time. A three-way treatment session was held with Defendant, his clinician, and U.S.P.O.

---

[2] The Violation Report is dated January 22, 2008.

Hopkins at Gateway Healthcare, Inc., on November 27, 2007. Defendant reported that he had been depressed. His need to comply with treatment to address his depression was discussed during the session. Defendant subsequently missed his sessions on December 3 and December 5, 2007.

**Special Condition: Defendant shall perform twenty hours of community service as approved by the probation office when not employed on a full-time basis.**

Since September 28, 2007, Defendant has performed only twenty-three hours of community service despite his unemployed status during the past four months. As to this violation, Defendant was instructed on October 18, October 26, November 1, November 13, November 19, November 27, 2007, and January 4, 2008, to provide the name of his community service agency. A community service log signed by Michael Jones from the Urban League indicated that from December 17 though December 27, 2007, Defendant shoveled snow for this agency for a total of twenty-three hours. On January 4, 2008, Defendant was instructed to call the probation office and to provide the name of his new community service location. On January 17, 2008, Defendant left a message at the probation office indicating that he had established his community service with Progreso Latino. Attempts to verify this information were unsuccessful.

On December 20, 2007, a compliance review hearing was conducted with Defendant because of his failure to comply with his community service requirements, to secure employment, and to report for drug testing. Defendant stated that he was depressed and that he was consuming alcohol on the weekends. He received a verbal reprimand, and he was instructed to comply in these areas of his supervision.

**Travel**

On January 23, 2008, Judge Torres ordered the issuance of a

summons for Defendant to appear to answer to the Petition. See Petition at 2. The summons was issued, and Defendant appeared before this Magistrate Judge on January 31, 2008. At that time Defendant was advised of the Petition and of the grounds for the alleged violation. Defendant, both personally and through counsel, waived a violation hearing and admitted to the violations contained in the January 22, 2008, Violation Report. This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. Defense counsel, Edward C. Roy ("Mr. Roy"), requested a ninety-day continuance to allow Defendant to comply with the terms and conditions of his supervision and, if Defendant were in compliance at the end of the ninety days, that he be continued on the same terms and conditions of supervised release. The Government joined in Mr. Roy's request. The Court granted the joint request and continued the matter ninety days to May 1, 2008.

On February 6, 2008, the Court was informed by U.S.P.O. Hopkins that on February 4, 2008, Defendant provided a positive urine screen for cocaine at the probation office and admitted to using cocaine on February 3, 2008. Defendant was summonsed to appear before the Court on February 13, 2008. At that time, Defendant was advised that the Probation Department had notified the Court of the positive urine screen and his admission to using cocaine. After hearing from the Government, Mr. Roy, and Defendant personally regarding what action should be taken in light of this development, the Court stated that it would recommend to Judge Torres that Defendant's supervised release be revoked and that Defendant be sentenced to six months imprisonment for the violations to which he had admitted on January 31, 2008. The Court further stated that it would issue a Report and Recommendation to that effect within a few days. This

is that Report and Recommendation.

## Law

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case the maximum term of supervised release has already been imposed. Therefore, supervised release cannot be extended.

Pursuant to § 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than two years in prison if the offense that resulted in the term of supervised release was a class C felony or class D felony. In this case, Defendant was on supervision for a class C felony. Therefore, he may not be required to serve more than two years imprisonment upon

revocation.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here three years), less any term of imprisonment imposed upon revocation of supervised release.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense,[3] or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of

---

[3] The term "controlled substance offense" is defined in §4B1.2(b) of the U.S.S.G.

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b).

imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade C violation.

Pursuant to §7B1.3(a)(1) of the U.S.S.G., upon a finding of a Grade A or B violation, the court shall revoke supervised release. Section 7B1.3(a)(2) provides that upon a finding of a Grace C violation, the Court may revoke or extend supervision or modify the conditions of supervision. Since Defendant has committed a Grade C violation, the Court may revoke, extend, or modify the conditions of supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule

in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The first provision, which allows for alternatives for any portion of the minimum term, applies to this matter.

According to §7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is no outstanding restitution, fine, community confinement, home detention, or intermittent confinement.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is three years. There has not been any term of imprisonment previously imposed for violations of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of IV at the

time of sentencing. The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of IV, an imprisonment range of 6 to 12 months is warranted.[4]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

## Disposition

### Recommendations By Government

The Government recommended that Defendant's supervised release be revoked and that he be sentenced to six months imprisonment. Assistant United States Attorney Sandra Beckner noted that Defendant had used cocaine only three days after the January 31, 2008, hearing, that he had disregarded efforts to help him, and that he had failed to attend drug testing and to perform community service.

### Defense Counsel's Recommendation

Mr. Roy submitted a letter dated February 11, 2008, from Defendant's counselor, Johnna Pratt, LICSW, of Gateway Healthcare, Inc. In the letter, Ms. Pratt argues that incarcerating Defendant will serve no purpose other than punishment and that it will not make it any easier for him to rehabilitate himself and to be reintegrated into society upon release. See Letter to Court from Pratt of 2/11/08. She further states:

> I do believe his struggle with substance abuse is a legitimate clinical issue and that he would benefit from

---

[4] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

> another episode of residential treatment. It has been my experience in working with substance abusers that many times several treatment episodes are required for the person to learn the skills and make the social support connections necessary to remain sober in the real world. I also believe Mr. Dantzler's reported difficulty in finding employment is legitimate; and that he is rendered fairly unemployable by his criminal background in combination with his lack of marketable skills and physical disability which interferes with his ability to consistently perform manual labor.

Id.

Mr. Roy asked the Court to give Defendant another chance because he had been under extreme pressure as a result of his mother being seriously ill with cancer and the passing of a friend. Mr. Roy argued that drug addicts do not get the help they need in prison and that if Defendant received the sentence recommended by the Government he would be shipped from one prison to the next.

**Defendant's Statement**

Defendant was given the opportunity to speak. He stated that he understood that he had just received a second chance from the Court (on January 31, 2008) but that he was under a lot of pressure because of his mother's illness and his friend's death. Defendant also related that while he had been attending AA meetings and doing community service, it was not easy having this "sickness" and he was really "messed up" at the present time and in need of help.

**Court's Recommendation**

As the Court indicated at the hearing, it is not unmoved by Defendant's plea for help. The Court also agrees that, regrettably, it is unlikely Defendant will receive any effective drug treatment while in prison because he will not be at any one detention or correctional facility long enough to benefit from whatever drug treatment programs may be available there.

Nevertheless, the circumstances of this case elevate the importance of the sentencing factor of deterrence. Defendant was before the Court on January 31, 2008, and admitted to violating the terms and conditions of his supervised release. The noncompliance had occurred on numerous occasions, and the Probation Department had repeatedly spoken to Defendant about his noncompliance before the Petition was filed. Despite the multiple nature of Defendant's violations, the Court agreed to follow the joint recommendation of the Government and Defendant's attorney and continued the matter for ninety days to allow Defendant the opportunity to demonstrate that he could comply with the terms of his supervised release. Only three days later, Defendant used cocaine in flagrant disregard of those terms.

The procedure of allowing defendants who have admitted to violating supervised release a period of time in which to demonstrate that they can, in fact, obey the conditions of release is a tool which the Court has found to be useful and effective in some cases. However, in order for it to continue to be effective, defendants must know that it is their final chance to avoid being sent to prison for failure to comply with the conditions of supervised release. If the Court were to recommend a disposition for Defendant other than a prison sentence, it would seriously weaken the effectiveness of this tool. Other defendants would tend to think that if they committed another violation, they could still get another chance by submitting a letter from their counselor and/or making an emotional plea to the Court.

The only real question is the length of the prison sentence which is necessary in order to preserve the effectiveness of this tool and to motivate Defendant to comply with the terms and conditions of supervised release. Although the Court indicated at the hearing on February 13, 2008, that it would recommend a

sentence of six months imprisonment, the Court has reflected further on Ms. Pratt's letter, Defendant's request for help with his drug problem, and Mr. Roy's argument that Defendant is unlikely to receive that help in prison. After doing so, the Court has concluded that a somewhat shorter sentence of four months will still have the necessary deterrent effect while reducing the time Defendant must wait before the drug treatment which he has requested can be made available to him. The ultimate goal is to obtain Defendant's compliance with the terms and conditions of supervised release. If after serving four months he is again noncompliant with the conditions of supervision, he will have demonstrated that a longer sentence is required to achieve that goal.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to four (4) months imprisonment to be followed by a period of supervised release for thirty-two (32) months with the following special conditions: 1) that Defendant participate in and satisfactorily complete a program of substance abuse treatment on an inpatient or outpatient basis as approved by the U.S. Probation Office; 2) that Defendant submit to up to seventy-two (72) drug tests per year as directed by the U.S. Probation Office; 3) that Defendant participate in and satisfactorily complete a program of mental health treatment on an inpatient or outpatient basis as approved by the U.S. Probation Office; and 4) that for every week Defendant is not employed on a full-time basis, Defendant shall perform twenty hours of community service as approved by the probation office.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv

72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
February 19, 2008